

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| KRISTEN SILVA, )<br><br>Plaintiff, )<br><br>vs. )<br><br>FORTIS BENEFITS INSURANCE )<br>COMPANY, a foreign corporation )<br>licensed to do business in the State of )<br>Illinois, )<br><br>Defendant. ) | No. 05 C 3340<br><br>Magistrate Judge Jeffrey Cole |

## MEMORANDUM OPINION AND ORDER

### INTRODUCTION AND BACKGROUND OF THE LITIGATION

Union Security Insurance Company ("USIC"), formerly known as Fortis Benefits Insurance Company ("Fortis"), moves for a protective order pursuant to Rule 26(c)(1), Federal Rules of Civil Procedure, precluding plaintiff's discovery requests for the production of documents, interrogatories, request for admission of facts and genuineness of documents, and notice of deposition of Tracie Hoffman ("the Discovery Requests"). For the reasons discussed below, the motion is granted.

Plaintiff filed a complaint on April 27, 2005, in the Circuit Court of Cook County, Illinois, alleging breach of contract and estoppel and seeking declaratory judgment. The complaint alleged that Fortis had wrongly refused to pay her $500,000 in additional life insurance benefits under a group life insurance policy issued by Fortis to her deceased husband, Edward Silva, through his former employer. The complaint charged that the carrier was estopped to deny coverage by virtue of two minimal payroll deductions by Mr.

Silva's employer in January 2003 and a letter from a Fortis *disability* analyst (in response to an inquiry from a financial planner for the plaintiff's husband) stating that *Mr. Silva* had "elected" additional coverage. Although the letter did not say that Fortis had agreed to this election, the complaint alleged that it "clearly and unambiguously provided that a contract for additional life insurance existed by and between" Fortis and Mr. Silva. The requisite allegations of reasonable and detrimental reliance by Mr. Silva were conspicuous by their absence from the estoppel count.

Because the group life insurance policy under which plaintiff sought benefits was an "employee benefit plan" as defined by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1002(1), Fortis removed this case to federal district court pursuant to 28 U.S.C. § 1441.

The plaintiff served the Discovery Requests on January 26, 2006. By agreement of the parties, USIC's time to respond to the Discovery Request was tolled pending settlement discussions between the parties, which have recently concluded without success. USIC argues that the discovery sought is improper because in an ERISA case, the court's review is limited to the administrative record. USIC has already provided that record to plaintiff and the court, and as a result, seeks a protective order that the "discovery not be had" under Rule 26(c)(1), Federal Rules of Civil Procedure.

The lengthy administrative record tells a melancholy story: faced with a severe and ultimately terminal illness, Mr. Silva applied for an additional $119,000 in life insurance coverage in early 2002. A review of his medical records by Fortis predictably led to a denial of his application pursuant to a provision in the group policy which required proof of good health satisfactory to Fortis. Mr. Silva was informed that although he could reapply he would have to show proof of good health. By December 2002, Mr. Silva's condition had worsened considerably. He was uninsurable by any standards. Nonetheless, he made an

2

online application to his employer for $500,000 in additional coverage. He was sent a paper application and a health questionnaire, which he never returned. He became disabled from his cancer in 2003 and died on October 6, 2004.

## A.
## Mr. Silva's Employee Life Insurance

Mr. Silva began working for Kuehne & Nagel, Inc., on October 16, 2000. (Administrative Record ("AR") at 34). Shortly thereafter, Fortis issued a certificate of group life insurance to Kuehne & Nagel, which became effective on April 1, 2001. (AR at 3). At that time, all employees received the benefit of a base life insurance policy, apparently in the amount of two times their yearly salary. Mr. Silva's policy was worth $247,500.92, and the plaintiff received a check in that amount upon Mr. Silva's death. (*Complaint for Declaratory Judgment and Related Relief*, ¶ 16). All employees were also eligible to apply for any amount of voluntary life insurance coverage. If they did so within the first 31 days of eligibility, they would not need to complete a questionnaire regarding their health. (*Id.*).

Mr. Silva applied for $119,000 of voluntary life insurance by application dated December 31, 2001. The application was received about a week later, long after the 31-day unconditional enrollment period had expired. (AR at 104). The initial attempt to acquire additional life insurance appears to have been in response to concerns about persistent abdominal pains that began in July, 2001 and became "severe" by about late October, 2001. These pains became so severe that Mr. Silva had a CT scan on December 5, 2001. The scan revealed a differential diagnosis of lymphoma of the small bowel or metastases to the small bowel. (AR at 30-3; 114). In his December 31st application, however, Mr. Silva stated that the results of his CT scan were normal, even though scans taken on September 26 and

3

December 6, 2001 were not. (AR at 114, 119). On December 12th, Mrs. Silva was notified of the test results. (AR 109).

On March 14, 2002, Fortis acknowledged receipt of Mr. Silva's application for additional life insurance coverage and informed him that "[u]nder the terms of the group contract you are required to submit proof of good health before your application can be approved." (AR at 128). He was also informed that "[v]oluntary Life insurance coverage will not become effective until satisfactory evidence has been received," including a new CT scan. *Id.* Based upon the medical information obtained by USIC's Medical Underwriting Department over the course of the next few months, Fortis denied Mr. Silva's application, and he was informed of the denial in a letter dated May 15, 2002. In that letter, Mr. Silva was also informed that he could reapply for coverage only if he provided a current medical examination, follow-up tests regarding his abdominal pain, and a current CT scan. (AR at 100; 4).

In the meanwhile, Mr. Silva was forced to deal with increasingly alarming medical news. In April 2002, he was diagnosed with diffuse malignant mesothelioma. The symptoms had been present since July 2001, becoming severe later in the year. (AR 30-31, 55,74-83). This led to a summer of tests, treatments, and clinical trials conducted by a series of specialists both locally and in Washington, D.C., culminating in a diagnosis of primary peritoneal mesothelioma. (AR at 30-32; 52-82; 77). Mrs. Silva was aware of the seriousness of her husband's condition. (AR at 82). Sadly, by November 14, 2002, one of Mr. Silva's treating physicians counseled him to think realistically about his overall prognosis and its implications for his family. (AR at 64). [1]

---

[1] Fortis became privy to these medical records when Mr. Silva later applied for – and was granted – long term disability benefits. (AR at 25).

Despite the Silvas' awareness of the seriousness of Mr. Silva's condition and despite Mr. Silva's awareness that any application for life insurance must be accompanied by proof of good health satisfactory to Fortis, Mr. Silva, on December 20, 2002, utilized his employer's "EnrollOnline.com" services to inform his employer – not Fortis – that he had "selected" from among listed options "employee supplemental life" coverage in the amount of $500,000. (AR at 26, 92). Trion, the plan's third-party administrator, responded to Mr. Silva's online application by sending him a paper application *with a health questionnaire*. (AR at 90-95; 4-6). The application stated in bold-faced type that if the requested amount "elected" was "over the guaranteed issue amount [i.e., $200,000] . . . complete all health questions on the next page." (AR at 93).[2] The questionnaire was identical to the one that Mr. Silva had previously filled out in December 2001 (AR at 104), and asked, *inter alia*, whether he had lost 10 lbs. or more in the last 12 months – he had – whether he had received any medication in any clinic or other health related facility in that period – he had – and whether he had ever been diagnosed or treated for cancer – he had. (AR at 94). Predictably, Mr. Silva never returned this application or completed the questionnaire.

Despite the necessarily preliminary nature of Mr. Silva's online submission, Kuehne & Nagel inexplicably deducted $20 from Mr. Silva's paycheck on January 15th and 31st of 2003 for "S.E.Life,"as if the $500,000 voluntary policy had been granted. (*Plaintiff's Response*, Exs. B, C; AR at 5). These deductions were paid to Fortis. (*Answer and Additional Defenses*, ¶ 84). The two paychecks affected would be Mr. Silva's last. He stopped working on January 24th due to the increasingly debilitating effects of the mesothelioma. (AR at 5). He thereafter claimed and received disability benefits through Fortis.

---

[2] The prerequisite for voluntary life insurance after the initial month of eligibility – which had long since passed – and for an amount in excess of $200,000 was proof of good health. (AR at 38, 404-405).

In April of 2003, Mr. Silva's financial planner, Jo Anne Pearson, sent Fortis a letter with some questions regarding her client's benefits. (AR at 50). Among other questions, she asked:

> Life Insurance – Group policy amount of $736,000 or $750,000. Or does he still have coverage after termination? If not what are his options to keep Life coverage or what is the deadline to convert coverage. Divorce Decree may have deadlines to secure other coverage/options.

(AR at 50). In a letter dated April 14, 2003, Fortis Disability Claims Analyst, Tracie Hoffman, responded:

> Base plan for Mr. Silva provide [sic] for 2 times his annual salary ($236,000.00). *He* has also *elected* to have additional life insurance which is 5 times his annual salary ($500,000.00 cap). If claimant is disabled longer than 6 months he is eligible for a waiver of premiums regardless of employment status. And he would still have coverage for Life Insurance.

(AR at 48)(Emphasis supplied).

This letter (along with the two paycheck deductions) would form the basis of plaintiff's claim that USIC is estopped to deny that Mr. Silva, who did not and could not have satisfied the indispensable precondition for additional coverage of providing proof of good health satisfactory to Fortis, did not obtain the additional $500,000 in coverage. (*Complaint*, ¶¶ 83-84; AR at 9-10).

On October 6, 2004, Mr. Silva died, leaving the plaintiff as his widow. (AR at 140). Fortis paid $247,500.92 of term life insurance, and initiated a review of plaintiff's claim for the $500,000 of voluntary life insurance. In a lengthy, comprehensive letter, dated June 10, 2005, it notified plaintiff that it was denying this claim and explained in detail the reasons for that denial. (AR at 22-29). The letter reviewed the details of Mr. Silva's melancholy medical history, his failure to have supported his December 2001 application with proof of good health, the declination of that application with its accompanying explanation that any reapplication must be accompanied by proof of good health, and how Mr. Silva's attempt in

6

December 2002 – after he learned of the true extent of his medical condition – to obtain an additional $500,000 in insurance was not accompanied by proof of good health, as required by the policy.[3] Consequently, Fortis explained, it "never approved or issued the voluntary coverage Mr. Silva sought." (AR at 26).

The letter explained that the two payroll check deductions by Kuehne & Nagel were a mistake, and by virtue of the explicit terms of the policy it could not be held responsible for Kuehne & Nagel's mistake since the latter was not an agent of Fortis, and Fortis could not be bound by an employer's actions or omissions. (AR at 26-27).[4]

Regarding the letter to Mr. Silva's financial planner from USIC's *Disability* Claims Analyst, Tracie Hoffman, Fortis explained that a unilateral election expressed to one's employer cannot create coverage under the policy. (AR at 27-28)(Emphasis supplied). As a matter of common sense and as a matter of law, this conclusion is unexceptional. One may "elect" to do many things in life that cannot be accomplished because they require the cooperation of someone else before one's desire can be realized. One may, for example, "elect" to apply to the Harvard Law School. That does not mean they will be accepted. Most elections in life are of this sort. Mr. Silva's unilateral act of *electing* to have additional coverage in the face

---

[3] The letter emphasized that although Trion had sent Mr. Silva a paper application for the coverage sought that included health questions, Mr. Silva never completed the paper application or the health questions.

[4] Mistakes are inherent in the human condition. The most gifted of judges make them. *Willy v. Coastal Corp.*, 503 U.S. 131, 139 (1992); *Marek v. Chesny*, 473 U.S. 1, 13 (1985)(Rehnquist, J., concurring); *Olympia Equipments v. Western Union*, 802 F.2d 217, 219 (7th Cir. 1986). So too do the most sophisticated of commercial entities. *Market Street Associates Ltd. Partnership v. Frey*, 941 F.2d 588, 597 (7th Cir. 1991)(Posner, J.). But the law frowns on playing Gotcha and relying on an obvious mistake to gain an unconscionable or opportunistic advantage. *Cf. Architectural Metal Systems, Inc. v. Consolidated Systems, Inc.*, 58 F.3d 1227, 1231 (7th Cir. 1995); *Market Street Associates*; *Packer Trading Co. v. CFTC*, 972 F.2d 144, 150 (7th Cir. 1992); *Centex Construction v. James*, 374 F.2d 921, 923 (8th Cir. 1967).

of impending death – without having to supply the proof of good health he knew was required by the policy – surely was. *Cf. Blum v. Spectrum Restaurant Group, Inc.*, 261 F.Supp.2d 697, 719 (E.D.Tex. 2003)(website confirmation of plaintiff's "elections" for coverage did not constitute an approval of supplemental life insurance benefits and neither it, nor mistaken payroll deductions, allowed coverage without evidence of good health).

An insurance policy is a contract, and there must be an offer and an acceptance. *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill.2d 11, 823 N.E.2d 561 (2005).[5] One cannot impose obligations on a carrier without the latter's consent. *Devers v. Prudential Property & Casualty Insurance Co.*, 86 Ill.App.3d 542, 408 N.E.2d 462, 463 (5th Dist. 1980). Thus, to say that *Mr. Silva elected* additional coverage is the beginning, not the end of analysis. Proof of good health was the condition precedent to any additional coverage, as Mr. Silva knew. Without satisfaction of that condition, there was no coverage. *See Blum*, 261 F.Supp.2d at 718. These kinds of provisions serve "the important and valid purpose of protecting the Plan from adverse selection by participants on their death bed. . . ." *Bird v. Eastman Kodak Co.*, 390 F.Supp.2d 1117, 1127 (M.D.Fla. 2005). If they are not adhered to, the affected plan would suffer significant and adverse economic consequences. *Id.* [6]

---

[5] The complaint recognized this. Paragraph 10 alleged that in January 2003 Mr. Silva "elected to contract with Fortis to provide additional elective life insurance. . . ."

[6] The rule is the same under state law. *Cf. John Hancock Variable Life Insurance Co. v. Estate of Fong,* 124 Fed.Appx. 523 (9th Cir. 2005)*; Massachusetts Mutual Life Insurance Co. v. Fraidowitz*, 443 F.3d 128 (1st Cir. 2006); *Friez v. National Old Line Insurance Co.*, 703 F.2d 1093, 1096 (9th Cir. 1983); *Martin v. Transamerica Occidental Life Insurance Co.*, 2002 WL 1041337 (E.D.Mich. 2002). Under Illinois law, an insurer is not liable when the conditions precedent to coverage are not met. *CINB v. Columbian National Life Insurance Co.*, 76 F.2d 733, 735 (7th Cir. ), *cert denied*, 296 U.S. 617 (1935); *Kioutas v. Life Insurance Co. of Virginia*, 35 F.Supp.2d 616 (N.D.Ill. 1998).

The letter stressed that Mr. Silva could not reasonably have relied on Ms. Hoffman's letter as proof of coverage because he had been expressly informed in May 2002 when his first application for increased coverage was denied that he had to provide proof of good health acceptable to Fortis Benefits as a precondition to coverage. (AR at 28). Of course, Mr. Silva had provided no such proof in December 2002 in his on-line submission, and no such proof could have been provided. Mr. Silva's condition was sufficiently grave that Fortis had denied coverage in May 2002. That it would do so again, given his worsened, near terminal condition in December 2002, was a certainty. As Fortis' June 10, 2005 letter explained, Mr. Silva was "uninsurable" – and he and his wife could have been under no illusions to the contrary. (AR at 28). [7]

Finally, Fortis directed Mrs. Silva's lawyer to the procedures for appeal in the group benefits policy. (*Id.*). That procedure required that requests be made in writing and provided for a form of "discovery":

> You have the right to review, upon request and free of charge, copies of all documents, records, and other information relevant to your claim for benefits. You have the right to review copies of any internal rule, guideline, protocol or similar criterion that was relied upon in making our decision to deny your claim.

(AR at 388). The procedure also allowed the individual "to submit issues and comments in writing, along with additional documents, records, and other information relating to" that individual's claim. (*Id.*). Plaintiff

---

[7] In mid-January, 2003, Mr. Silva and his wife were informed by his doctors that "his symptoms and ongoing decline are the result of his progressive [disease which] appears to be progressing at a rate which is quicker than that seen in many pts who have peritoneal mesothelia . . . ." His symptoms, the doctor noted, are the result of his "progressive malignancy . . . . " Mr. Silva's performance status was "declining, and he is having trouble maintaining adequate nutrition." In light of this declining status, the doctor concluded that not only was it unlikely that he would gain benefit if systemic chemotherapy were attempted, he could "potentially do worse. . . ." (AR at 54).

did, in fact, appeal, arguing that Mr. Silva's file contained no correspondence subsequent to his online application to his employer that required further paperwork from Mr. Silva or denied him coverage. (AR at 13-14). Ignored in this "Gotcha" argument were all the points raised in the Fortis letter denying the claim, including the explicit requirement in the group policy of proof of good health satisfactory to Fortis, the instructions from Fortis in May, 2002 that any further application required proof of good health, and the terminal nature of Mr. Silva's illness and thus his uninsurability (and the Silvas' awareness of his condition).

Conspicuously absent was any claim that Mr. Silva had been in any way harmed from Fortis' alleged failure after the online submission to Mr. Silva's employer to tell him further paperwork was required or its failure to have informed him in writing that coverage had been denied. There was no explanation of how a terminally ill, uninsurable person could have reasonably relied on Ms. Hoffman's letter and two payroll deductions and concluded that he had been granted a half million dollars in additional life insurance. Nor was there any attempt to explain away the fact that Mr. Silva had not formally or properly applied for the extended coverage or the fact that only months earlier, he had been denied coverage by Fortis in an amount 80 % less than that now thought to have been granted. Yet, reasonable and detrimental reliance is a requirement of an ERISA estoppel claim. *Teamsters & Employers Welfare Trust of Illinois v. Gorman Bros. Ready Mix,* 283 F.3d 877, 883-884 (7th Cir. 2002)(Posner, J.); *Shields v. Local 705 IBT Pension Plan,* 188 F.3d 895, 901 (7th Cir. 1999); *Jones v. UOP,* 16 F.3d 141, 144 (7th Cir. 1994). And, for there to be an estoppel claim there must generally be an unambiguous and knowing misrepresentation in writing on which the plaintiff relies, *Vallone v. CNA Fin. Corp.,* 375 F.3d 623, 629 (7th Cir. 2004)–which did not exist in Mr. Silva's case.

Fortis affirmed its earlier denial on September 27, 2005, reiterating the reasons for that decision. (AR at 1-8). Fortis again pointed out that it had never received Mr. Silva's application for the $500,000 in supplemental life insurance. (AR at 5-6). It was emphatic in its rejection of the contention that Mr. Silva had never been sent a paper application, although that omission, even had it occurred, could not have caused harm to Mr. Silva since he was uninsurable in December, 2000. The September 27th letter pointed out the claims file reflected that Mr. Silva had been sent a paper application and a health questionnaire. (AR at 7).[8]

The letter again explained that the *de minimus* payroll deductions were an obvious mistake, and one which did not bind Fortis. (AR at 6). Fortis added that, in compiling her April 2003 letter, Ms. Hoffman, who was a disability analyst, relied on information from "either Kuehne & Nagel or Trion." (AR at 5). Basically, it was USIC's determination that Mr. Silva never actually applied for the additional $500,000 in coverage, never provided the evidence of good health necessary to obtain such coverage and could not have reasonably relied on Ms. Hoffman's letter or the paycheck deductions as confirmation of insurance coverage.

## B.
## The Parties' Discovery Dispute

USIC seeks a protective order stating that "that the disclosure or discovery" plaintiff seeks "not

---

[8] As discussed *infra*, estoppel in an ERISA context, as in other contexts, requires that there be a knowing misrepresentation in writing. It would thus appear that the absence of a writing would not suffice to trigger an estoppel. Moreover, since inferences from silence are perilous, Posner, Cardozo: A Study In Reputation, 37 (1990); *Coleman v. Interco, Inc. Division Plans*, 933 F.2d 550, 552 (7th Cir. 1991), serious questions arise regarding the reasonableness of any reliance on the absence of representations, such as those adverted to by Mrs. Silva's lawyer in his communications with Fortis.

be had," Rule 26(c)(1), since ERISA jurisprudence limits the evidence that a court can consider in reviewing a decision to deny employee benefits. Because the applicable standard of review is "arbitrary and capricious," USIC submits that the court's review is confined to the administrative record. As it has already provided both the plaintiff and the court with that record, it argues the additional discovery plaintiff seeks is inappropriate.

The plaintiff concedes that the court's review is limited in ERISA cases, but submits that this case is different because it has alleged that USIC is estopped from denying coverage, and the usual restrictive rules governing judicial review therefore do not apply. She contends that the vast majority of her discovery requests relate to issues relevant to that claim, such as Ms. Hoffman's job responsibilities, the information she reviewed for her April 14, 2003 letter, and evidence bearing on USIC's receipt and retention of the two small paycheck deductions in January 2003.[9]

## II.
## ANALYSIS

### A.
### Standard For Obtaining A Protective Order

A motion for a protective order highlights the tension between Rules 26(b) and 26(c). Generally speaking, the Federal Rules of Civil Procedure provide for liberal discovery. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." At the same time, however,

---

[9] Plaintiff also somewhat off-handedly argues that because the court entered a minute order setting a deadline for fact discovery, she is entitled to all of the fact discovery she seeks. (*Plaintiff's Response in Opposition*, at 3). Such an argument hardly merits attention. Fact discovery deadlines are set as a matter of course, and these neither indicate that all fact discovery is allowable, nor preclude a party from seeking a protective order.

under Rule 26(c), the court may enter an order "for good cause shown . . . to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." This puts the burden on the party seeking the protective order to show some plainly adequate reason therefor. *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, p. 265 (1970).

In order to establish good cause, there must be a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981); 8 C. Wright & A. Miller, Federal Practice and Procedure § 2035, p. 265 (1970). Here, USIC grounds its request for a protective order on the limited scope of review in ERISA cases and the general limitation of discovery in such cases to the administrative record.

**B.**
**Discovery In ERISA Cases Is Limited To The Administrative**
**Record In All But Exceptional Cases**

USIC's denial of Mrs. Silva's claim for her late husband's employee life insurance benefits falls under 29 U.S.C. § 1132(a)(1)(B). The Supreme Court has made clear that "a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a *de novo* standard, unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 115 (1989). This means that plenary review is the default standard; it is required when the plan documents contain no indication of the scope of judicial review. *Diaz v. Prudential Ins. Co. of America*, 424 F.3d 635, 636-37 (7th Cir. 2005); *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000). "If a plan 'is going to reserve a broad, unchanneled discretion to deny claims, [plan participants] should be told this, and told clearly.'"

13

*Diaz*, 424 F.3d at 637. When that is the case, federal courts have adopted the arbitrary and capricious standard as the appropriate standard of review for actions under §1132(a)(1)(B). *Firestone*, 489 U.S. at 109; *Rud v. Liberty Life Assur. Co. of Boston*, 438 F.3d 772, 773 (7th Cir. 2006).

The group life insurance plan in this case, in unambiguous terms, confers sole discretionary authority on Fortis to determine eligibility for benefits and the meaning of the policy's terms:

> We have the *sole discretionary authority to determine eligibility for participation or benefits* and to interpret the terms of the Policy. All determinations and interpretations made by us are conclusive and binding on all parties.

(*Motion for Protective Order*, Ex. B, at 21)(Emphasis supplied). This is the type of language that has been found to trigger the application of the arbitrary and capricious standard of review. *See Semien v. Life Ins. Co. of North America*, 436 F.3d 805, 810-811 (7th Cir. 2006)(" . . . sole discretion and authority to apply, construe and interpret all Plan provisions, to grant or deny all claims for benefits and to determine all benefit eligibility issues."); *Shyman v. Unum Life Ins. Co.*, 427 F.3d 452, 455 (7th Cir. 2005)(". . . discretionary authority to determine your eligibility for benefits and to interpret the terms and conditions of this Policy."); *Herzberger*, 205 F.3d at 331 (positing "safe harbor" language: "Benefits under this plan will be paid only if the plan administrator decides in his discretion that the applicant is entitled to them.").

A court's review under the arbitrary and capricious standard is limited to the evidence in the administrative record. *Hess v. Reg-Ellen Machine Tool Corp.*, 423 F.3d 653, 662 (7th Cir. 2005); *Vallone v. CNA Fin. Corp.*, 375 F.3d 623, 629 (7th Cir. 2004). In *Perlman v. Swiss Bank Corp. Comprehensive Disability Protection Plan*, 195 F.3d 975, 982 (7th Cir. 1999), the Court of Appeals discussed the resulting limit on discovery in such cases:

14

We have allowed parties to take discovery and present new evidence in ERISA cases subject to de novo judicial decisions, *but never where the question is whether a decision is supported by substantial evidence, or is arbitrary and capricious.* Six courts of appeals have held that when review under ERISA is deferential, courts are limited to the information submitted to the plan's administrator. One court has gone the other way, but we believe that the majority has this right. Perhaps the disagreement is more apparent than real. Courts in the majority have allowed . . . that discovery may be appropriate to investigate a claim that the plan's administrator did not do what it said it did – that, for example, the application was thrown in the trash rather than evaluated on the merits. But when there can be no doubt that the application was given a genuine evaluation, judicial review is limited to the evidence that was submitted in support of the application for benefits, *and the mental processes of the plan's administrator are not legitimate grounds of inquiry* any more than they would be if the decisionmaker were an administrative agency.

*Perlman*, 195 F.3d at 982 (citations omitted)(emphasis supplied).

In all but exceptional cases, then, discovery beyond the administrative record is inappropriate. *Semien*, 436 F.3d at 815. Since that is the standard of review applicable in this case, discovery is impermissible and constitutes good cause for the protective order.

## C.
### Plaintiff's Estoppel Claim Does Not Present The Exceptional Circumstances Necessary To Allow For Discovery Beyond The Administrative Record

The estoppel claim is based on the April 14, 2003 letter indicating *Mr. Silva* had "elected" coverage, and the two deductions for "S.E.Life" from his paychecks in January of 2003. It is alleged that these events estop USIC from denying that "a contract of insurance exists, (*Complaint*, ¶ 85), and that *Vallone v. CNA Financial Corp.* authorizes the requested discovery. Far from supporting the plaintiff's contention, *Vallone* saps it of any force.

In *Vallone*, the plaintiffs were potential early retirees, who were told, orally and in writing, that the monthly healthcare allowance benefit offered in their early retirement package would be a "lifetime benefit."

375 F.3d at 626. About six years after they accepted these early retirement packages, their employer told them that the healthcare allowance benefit was being eliminated. *Id.* As part of their suit challenging this termination, the plaintiffs claimed the defendant was estopped from denying the benefit. The district court stayed all discovery, limiting its review of all the plaintiffs' claims to the administrative record and ultimately granted the defendant's summary judgment motion. *Id.* at 627.

On appeal, the plaintiffs challenged, *inter alia*, the district court's discovery ruling. The Seventh Circuit agreed that as to most of the plaintiff's claims review was indeed limited to the administrative record. *Id.* at 629. But the court found that the plaintiffs' estoppel claim was not actually an appeal of a decision of the plan administrator. *Id.* The court explained that such a claim required a knowing misrepresentation – generally in writing – which the plaintiffs in that case alleged to be the employer's unambiguous representation that the benefits would be vested when the employer knew they could be terminated or modified. Because the plan administrator did not make any finding whether the equities of the situation required the employer to honor the alleged representations, the estoppel claim was not a review of a decision of the plan administrator. As a result, the Seventh Circuit concluded that the district court erred in limiting discovery to the administrative record with respect to the estoppel claim. *Id.* at 629-30.

The plaintiff's reliance on *Vallone* depends for its efficacy on its studied avoidance of the linchpin of that decision and the facts of the instant case as set forth in the complaint and the administrative record. In *Vallone*, the plan administrator had no opportunity to consider the early retirees' estoppel claim. As the court explained, that meant that there were no findings regarding the estoppel claim for the district court to review. The instant case differs, *toto caelo*. Fortis considered in meticulous detail the plaintiff's claim and her appeal of its denial. USIC's written explanations were lengthy, comprehensive, carefully

16

considered, and responsive to and explanatory of the facts on which Mrs. Silva's lawyer pitched his argument. (AR at 22-29; 1-8). Ms. Silva's lawyer's presentations, by contrast, were characterized by their laconism, unresponsiveness and conclusory nature.

Despite its centrality to any estoppel claim under ERISA, Mrs. Silva's lawyer's presentations to Fortis made no claim of detrimental reliance by Mr. Silva on Ms. Hoffman's letter, which accurately stated that *Mr. Silva* had *elected* additional coverage, but did not say that his unilateral election had been agreed to by Fortis.[10] Also absent was any claim of reasonable or detrimental reliance on the two *de minimus* payroll deductions in January 2003. (AR at 17; 9-10). Mrs. Silva's lawyer made no attempt to explain how so seriously ill a person as Mr. Silva was could reasonably have relied on these two events to conclude that he had an additional $500,000 in coverage when, months earlier, his application for an additional $119,000 in coverage had been rejected on medical grounds, and he had been told that any further application would require proof of good health satisfactory to Fortis – a condition precedent to coverage under the plan. *Gupta v. Freixenet, USA, Inc.*, 908 F.Supp. 557, 564 (N.D.Ill. 1995).

Unlike the plan administrator in *Vallone*, then, Fortis not only had occasion to consider the bases for plaintiff's estoppel claim, but thoughtfully did so – both initially and on appeal. Thus, the administrative record includes a reviewable determination regarding the estoppel claim, thereby removing the case from the orbit of *Vallone*. *Bingham v. CNA Financial Corp.*, 408 F.Supp.2d 563 (N.D.Ill. 2005) is, however, instructive. There, the plaintiff challenged a significant decrease in severance pay by alleging an ERISA violation and an estoppel claim against her employer. The court noted that, because of the

---

[10] The Complaint alleges that "it would be unfair, unjust and prejudicial to [plaintiff] and her deceased husband . . . for USIC to represent in writing that a contract for insurance existed . . ." (¶ 86). But that is not what Ms. Hoffman's letter said.

17

requirement that an ERISA plaintiff exhaust administrative remedies, it was up to the plaintiff to have presented her estoppel claim during her employer's appeals process. That meant that it was also up to the plaintiff to develop the record relevant to her estoppel claim during that process. *Id.* at 567.[11]

The court found two factors significant: that the employer's benefit plan specifically required an individual requesting an administrative appeal to "state the reason(s) you believe the claim was improperly denied and submit any additional information you think is appropriate," and that ERISA requires the plan administrator to disclose certain materials to beneficiaries, generally upon written request. *Id.* So there were avenues for development of the estoppel claim at the administrative level and, whether or not the plaintiff took full advantage of them, she was not entitled to full discovery in the federal district court. *Id.* at 568. The court found that the plan administrator's findings on the estoppel claim were part of the decision entitled to review under the arbitrary and capricious standard. *Id.* And, accordingly, it concluded that the plaintiff was not entitled to discovery beyond the administrative record. *Id.*

Like the plan in *Bingham*, the Fortis plan also provided an avenue for the plaintiff to present,

---

[11] The requirement that an ERISA plaintiff exhaust all administrative remedies prior to filing suit would necessitate plaintiff having presented her estoppel claim to Fortis. Although ERISA does not explicitly require exhaustion, the Seventh Circuit has repeatedly held that a district court can require an ERISA plaintiff to exhaust internal administrative remedies as a prerequisite to filing suit in federal court. *Stark v. PPM America, Inc.*, 354 F.3d 666, 671 (7th Cir. 2004); *Zhou v. Guardian Life Insurance Co. of America*, 295 F.3d 677, 679 (7th Cir.2002); *Doe v. Blue Cross & Blue Shield United of Wisconsin*, 112 F.3d 869, 873 (7th Cir.1997). That obviously has occurred.

The exhaustion requirement encourages the private resolution of ERISA-related disputes, reduces the number of frivolous lawsuits and allows for the preparation of a more complete factual record. *Gallegos v. Mt. Sinai Medical Center*, 210 F.3d 803, 807-08 (7th Cir.2000). The Seventh Circuit has recognized just two circumstances in which a failure to exhaust may be excused: if there is a lack of meaningful access to review procedures, and if pursuing internal remedies would be futile. *Stark*, 354 F.3d at 671. Those circumstances are not involved here, and courts have held that the exhaustion requirement applies to estoppel claims. *Bingham v. CNA Financial Corp.*, 408 F.Supp.2d 563, 567 (N.D.Ill. 2005); *Jacobs v. Xerox Corp. Long Term Disability Income Plan*, 356 F.Supp.2d 877, 893 (N.D.Ill. 2005).

document, and develop her estoppel claim during the administrative appeal process, which Mrs. Silva did, and which she attempted to support by the only evidence that existed. The end result was an administrative decision that exhaustively considered and punctiliously addressed the plaintiff's estoppel claim. Like the decision in *Bingham*, that determination is entitled to deferential review. And as with *Bingham*, it follows that discovery beyond the administrative record would be inappropriate. Like a suit to challenge an administrative decision, a suit under ERISA is a review proceeding, not an evidentiary proceeding. *Doe v. Blue Cross & Blue Shield United of Wis.*, 112 F.3d 869, 875 (7th Cir.1997). For that reason, the Seventh Circuit has cautioned district courts to limit discovery "except in exceptional circumstances." *Semien*, 436 F.3d at 815. None exist here.

## II.
### The Relevance Of The Requested Discovery To The Estoppel Claim

Even if one were to conclude that *de novo* review was the proper standard, it would not follow that the plaintiff is entitled to propound her discovery. The Federal Rules of Civil Procedure provide for liberal discovery. *Swierkiewicz,* 534 U.S. at 512. Under Rule 26(b)(1),"[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the claim or defense of any party." As expansive as the definition of relevancy is under Rule 401 of the Federal Rules of Evidence, *United States v. Murzyn*, 631 F.2d 525, 529 (7th Cir. 1980); *United States v. Marks*, 816 F.2d 1207, 1211 (7th Cir. 1987), the standard under the discovery provisions of the Federal Rules of Civil Procedure is even broader. *Hofer v. Mack Trucks*, 981 F.2d 377 (8th Cir. 1992).

However, the evidence must still be relevant. In order to prevail on an estoppel claim under ERISA, a plaintiff must show a knowing misrepresentation by the defendant in writing on which the plaintiff

19

reasonably relied to his detriment. *Downs v. World Color Press*, 214 F.3d 802, 805 (7th Cir. 2000); *Coker v. TWA*, 165 F.3d 579, 585 (7th Cir.1999); *Vallone*. The Seventh Circuit has emphasized the "narrow scope" of estoppel claims and has emphasized that "only extreme circumstances" justify such claims. *Vallone*, 375 F.3d at 639; *Sandstrom v. Cultor Food Science, Inc.*, 214 F.3d 795, 797 (7th Cir. 2000). Statements or conduct by bureaucrats implementing a plan do not estop the employer to enforce the plan's written terms. *Sandstrom*, 214 F.3d at 797.

While estoppel principles are applicable to claims for benefits under ERISA plans, the availability of the defense in the ERISA context is constrained by other important considerations that underlie ERISA. Most notably, the courts have stressed repeatedly "that equitable estoppel cannot dilute the rule forbidding oral modifications to an ERISA plan." *Bowerman v. Wal-Mart Stores, Inc.*, 226 F.3d 574, 586 (7th Cir. 2000). *See also Downs v. World Color Press*, 214 F.3d 802, 805 (7th Cir. 2000). They have, quite simply, rejected the claim that bad advice delivered verbally entitles plan participants to whatever the oral statement promised, when written documents provide accurate information. *Bowerman; Baker v. Metropolitan Life Insurance Co.*, 364 F.3d 624, 631 (5th Cir. 2004). Where estoppel has been applied in an ERISA context, the facts demonstrated that the claimant was misled by written representations of the insurer or plan administrator into failing to take an action that would have enabled the claimant to receive benefits under the plan. *Id.* In the instant case, estoppel would seem particularly inapplicable since no act or omission by Fortis caused Mr. Silva to fail to take action that would have enabled him to receive extended life insurance coverage since it was impossible for him to provide proof of good heath. *Cf. Todd v. Dow Chemical Co.*, 760 F.2d 192, 196 (8th Cir. 1985)(since the plaintiff was uninsurable and could not have obtained additional life insurance mistaken payroll deductions could not result in an estoppel);

*Shields v. Local 705, Internat'l Brotherhood of Teamsters Pension Plan*, 188 F.3d 895, 900 (7th Cir. 1999)(no showing of harm).

## CONCLUSION

For the foregoing reasons, the defendant's motion for a protective order [#24] is GRANTED. The parties are free to submit any motions relating to the merits of the case that they desire, in accordance with a briefing schedule that will be set at a status conference on 7/18/06 at 8:30 a.m.

ENTER:_____

UNITED STATES MAGISTRATE JUDGE

**DATE:** 7/12/06